# ORIGINAL

FILED
U.S. DISTRICT COURT

2010 OCT 26　PM 4: 10

CLERK_____
SO. DIST. OF GA.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF GEORGIA

## DUBLIN DIVISION

| | | |
|---|---|---|
| MARVIN LEE HEIGHT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-064 |
| | ) | |
| GREGORY McLAUGHLIN, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner, an inmate incarcerated at Macon State Prison, in Oglethorpe, Georgia,

brought the above-captioned petition pursuant to 28 U.S.C. § 2254. For the reasons set forth

below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this

civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

## I.　　BACKGROUND

Petitioner was indicted for murder by a Laurens County grand jury on October 2,

2001. (Doc. no. 5, Ex. 1, p. 1.) Petitioner was convicted of murder following a jury trial,

and the trial court sentenced him to life imprisonment.[2] (Id.) Following the denial of a

---

[1]Petitioner is incarcerated at Macon State Prison where the current warden is Gregory McLaughlin. Therefore, as the proper Respondent in this action is Gregory McLaughlin, the warden at Macon State Prison, pursuant to Fed. R. Civ. P. 25(d)(1), the Clerk is **DIRECTED** to substitute Gregory McLaughlin as Respondent in this case.

[2]Although the State initially sought the death penalty, it withdrew its notice of intent to seek capital punishment after the Georgia Supreme Court, ruling on an interlocutory appeal, reversed the trial court's refusal to admit polygraph evidence during the sentencing phase of Petitioner's trial. (Id.; Height v. State, 604 S.E.2d 796, 799 (Ga. 2004).)

motion for a new trial, Petitioner filed a direct appeal[3] in which he raised the following arguments:

(1)     the evidence was insufficient to show that Petitioner was responsible for the victim's death;

(2)     the trial court erroneously admitted a custodial statement in which he confessed to the crime;

(3)     the trial court erroneously dismissed a venireman because of his religious convictions; and

(4)     the trial court erroneously denied his motion for mistrial premised on testimony that improperly placed his character in issue.

(Id. at 1-4.) On March 19, 2007, the Georgia Supreme Court rejected Plaintiff's contentions and affirmed his conviction. (Id.)

On January 22, 2008, Petitioner filed a state habeas corpus petition in the Superior Court of Hancock County. (Id., Ex. 2.) Petitioner was permitted to amend his original petition in that action, and he raised the following grounds for relief in his amended state habeas petition:

(1)     his counsel provided ineffective assistance at trial by failing to conduct independent DNA testing on several items collected during the investigation of the crime;

(2)     his counsel provided ineffective assistance at trial by failing to object to evidence admitted at trial without having been DNA tested for a match to the victim or the perpetrator;

(3)     his counsel provided ineffective assistance at trial by conceding Petitioner's presence at the crime scene during closing argument;

(4)     his counsel provided ineffective assistance at trial by failing to object to

_____

[3]Petitioner was represented by Michael Garrett both at trial and on appeal. (Id., Ex. 3, p. 3.)

hearsay testimony and failing to conduct DNA testing on the state's evidence; and

(5)    his counsel provided ineffective assistance on appeal by failing to move for post-conviction DNA testing on several items collected during the investigation of the crime.

(Id. at 6-10; Id., Ex. 3, pp. 2-3, 10.) Petitioner's state habeas corpus claims were denied on February 6, 2009. (Id., Ex. 3, p. 12.) The Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal on June 2, 2009. (Id., Ex. 4.)

Petitioner then timely filed the above-captioned petition, in which he raises the following six grounds for relief:

(1)    his counsel provided ineffective assistance at trial by failing to conduct DNA testing on several items collected during the investigation of the crime;

(2)    his counsel provided ineffective assistance at trial by failing to have the evidence admitted at trial tested for DNA to determine if there was a match to the victim, Petitioner, or the perpetrator of the crime;

(3)    his counsel provided ineffective assistance on appeal by failing to request post-trial DNA testing of the state's evidence;

(4)    he is actually innocent of the crime that formed the basis of his conviction;

(5)    the evidence admitted during his trial was insufficient to convince a rational jury of Petitioner's guilt beyond a reasonable doubt; and

(6)    the trial court erred by admitting a statement he made to police officers while under custodial interrogation in which he confessed to the crime.

(Doc. no. 1.) Respondent submits that Petitioner is not entitled to relief on his asserted claims because each claim either lacks merit or is procedurally defaulted. (Doc. no. 4.)

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), signed into

3

law on April 24, 1996, amended § 2254(d) to provide:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court addressed Section 2254(d) in Brown v. Payton, 544 U.S. 133 (2005). The Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> [The] AEDPA provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. at 141 (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003). In sum, a habeas petition may be granted if "the state court's decision was contrary to, or involved an objectively unreasonable application of, the

governing Federal law set forth by Supreme Court cases." McIntyre v. Williams, 216 F.3d 1254, 1257 (11th Cir. 2000).

Moreover, the AEDPA sets a highly deferential standard of review for state court factual determinations. The AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); see also Crawford v. Head, 311 F.3d 1288, 1317 (11th Cir. 2002) (affirming state court factual determination "because there is support for it in the record and [the petitioner] has not rebutted the finding by clear and convincing evidence"). Thus, "some evidence suggesting the possibility" that a petitioner's version of the pertinent facts is correct is not sufficient to carry the burden of showing that a state court made an unreasonable determination of fact as contemplated by § 2254(d)(2). Bottoson v. Moore, 234 F.3d 526, 540 (11th Cir. 2000). If the record provides any support for a state court's factual findings, this Court may not set aside those findings unless and until they are rebutted by clear and convincing evidence. Crawford, 311 F.3d at 1317.

## III. DISCUSSION

### A. Claims Rejected by the State Courts

Five of the grounds for relief enumerated by Petitioner consist of claims previously considered and rejected by either the Georgia Supreme Court on direct appeal or the state habeas court. The Court will address these claims in turn.

#### 1. Ineffective Assistance of Trial Counsel

Grounds One and Two of the instant petition are premised on ineffective assistance

5

of trial counsel. In Ground One, Petitioner claims his trial counsel was ineffective for failing to conduct independent DNA testing on several items collected during the investigation of the crime; in Ground Two, Petitioner claims his trial counsel was ineffective for failing to conduct DNA testing on evidence admitted against him at trial.[4] (Doc. no. 1, p. 6.) In both of these instances, Petitioner contends that DNA testing should have been done to determine if the DNA on the items in question matched the victim, Petitioner, or the actual perpetrator of the crime. (Id.)

Petitioner asserted both of these claims in his amended state habeas petition. (Doc. no. 5, Ex. 2, pp. 1-5.) The state habeas court rejected the claims. (Id., Ex. 3.) Specifically applying the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), that court determined that Petitioner's trial counsel acted within the constitutional parameters of reasonableness in his representation of Petitioner. (See id. at 2-10.)

As correctly noted by the state habeas court, ineffective assistance of counsel claims are analyzed under the two-prong test set forth by the Supreme Court in Strickland v. Washington. To make out a claim of ineffective assistance of counsel, Petitioner must first show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, he must show that he suffered such prejudice that, but for his counsel's errors, there is a reasonable probability that the results of the proceeding would have been different. Id. at 694. Here, the state habeas court's adjudication did not

---

[4]Though Petitioner does not specify which evidence he is referring to in Grounds One and Two of his federal habeas petition, it is apparent from his state habeas petition that they include Caucasian hairs found on the victim and on materials used in the commission of the crime, blood samples found inside a mask, and mucus samples collected from materials used in the commission of the crime. (See doc. no. 5, Ex. 2, pp. 6-8.)

6

result in a decision in which it reached a different result from a Supreme Court case on materially indistinguishable facts. Moreover, it cannot be said that the state habeas court applied a rule that contradicts governing Supreme Court law; rather, the state habeas court was correct to apply <u>Strickland</u>, as noted above. Thus, the Court will focus on the question of whether the state habeas court unreasonably applied <u>Strickland</u> to the facts of this case. <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002) ("[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, [the petitioner] must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Id.</u> (internal citations omitted)).

With regard to the performance prong of <u>Strickland</u>, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. "Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." <u>Fugate v. Head</u>, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as counsel acted . . . ." <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

7

deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Smith v. Wainwright, 777 F.2d 609, 616 (11th Cir. 1985). Under the prejudice prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome . . . ." Id. at 616 (citing Strickland, 466 U.S. at 694-95). As the Eleventh Circuit has ruled, an affirmative showing of prejudice that would undermine the results of the proceedings is necessary because "'attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004).

Along with these basic principles concerning ineffective assistance of counsel claims, the Court must also consider the facts underlying Petitioner's conviction. The facts underlying Petitioner's conviction are set forth in the Georgia Supreme Court decision affirming his conviction, and, pursuant to § 2254(e)(1), are presumed to be correct. The facts are as follows:

> On January 3, 2001, [Lorange] Wood was found beaten to death inside the gas station store he owned and operated in Dudley, Georgia. He was last seen alive on the previous day at approximately 3:00 p.m. at a local bank, where he cashed a check and requested payment in ten dollar denominations. Shortly after that time, a customer visited the gas station, where the truck Wood had driven to the bank was parked, but left after Wood failed to emerge to pump her gas. Another customer then arrived and, while waiting for a response to his knock at the door of the store, encountered [Petitioner], an employee at Wood's store, who told the customer that Wood was asleep. After Wood's body was discovered the following day, a Department of

Corrections K-9 dog led investigators from the crime scene to a nearby wooded area, where investigators found weapons used in the crime, and then directly to a nearby mobile home in which [Petitioner] resided. Approximately one week later, [Petitioner] voluntarily approached police and made statements indicating knowledge about details of the crime that had not been released to the public, on the basis of which police obtained a search warrant and found a wallet containing 25 ten dollar bills in [Petitioner's] trailer. After his arrest, [Petitioner] confessed to the crime in an account consistent with the evidence uncovered in the investigation.

(Doc. no. 5, Ex. 1, pp. 1-2.)

As noted above, Petitioner alleges in Grounds One and Two of his federal habeas petition that his trial counsel was ineffective in that he failed to conduct or request DNA testing on items found during the investigation of the crime and items entered into evidence against Petitioner at trial. (Doc. no. 1, p. 6.) When these claims were before the state habeas court, it found that Petitioner's counsel did not conduct or request DNA testing on the items in question "because he believed it would not be in Petitioner's best interests at trial . . . ." (Doc. no. 5, Ex. 3, p. 5.) The state habeas court further found that counsel had determined that his most viable defense was to argue that the homicide was committed by multiple Caucasians and that Petitioner, while present when the crime occurred, did not participate in its commission. (Id. at 4.) The state habeas court found that Petitioner's counsel strategically decided not to conduct DNA testing because "he did not know what the results were going to be," and if the DNA on the items in question turned out to match Petitioner's DNA, then counsel would not be able to argue convincingly that the crime was committed by Caucasians without Petitioner's participation. (Id. at 5.) The state habeas court also noted that counsel decided against DNA testing because it allowed him to argue more effectively that the state had not conducted a thorough investigation of the crime. (Id.)

9

In light of these findings, the state habeas court held that Petitioner failed to meet his burden under the first prong of Strickland because counsel's failure to conduct DNA testing was not unreasonable. (Id. at 8.) To the contrary, the state habeas court found that "[c]ounsel made a reasonable, strategic decision not to request DNA testing because he wanted to put the best defense forward that was supported by the evidence at trial and he did not want to risk that defense in the event that the test inculpated Petitioner." (Id.) The state habeas court noted that Petitioner's failure to meet the first prong of Strickland was a sufficient basis to reject Petitioner's claim; however, it held that even if counsel's failure to conduct DNA testing were constitutional error, Petitioner's claim would still fail because his claim was based on speculation that the DNA testing would have come back in his favor, which was insufficient to show the prejudice required under the second prong of Strickland. (Id. at 9-10.)

With regard to the instant petition, Petitioner has offered no additional evidence – much less "clear and convincing evidence" – in his federal habeas petition to undermine or contradict the factual determinations of the state court. Moreover, Petitioner has presented nothing to call into question the state habeas court's conclusion, in light of its factual determinations, that Petitioner's trial counsel's decision not to conduct DNA testing was both strategic and reasonable, and that Petitioner was not prejudiced by his counsel's decision not to conduct that testing. Therefore, there is nothing to suggest that the state habeas court's analysis of Petitioner's case was contrary to Strickland, or that the state habeas court unreasonably applied Strickland's standards to Petitioner's claims of ineffective assistance of trial counsel. Accordingly, Petitioner's claims in Grounds One and Two are without merit

and do not form a basis for relief.

## 2.     Ineffective Assistance of Appellate Counsel

Petitioner argues in Ground Three that his appellate counsel provided ineffective assistance. In particular, he contends that his appellate counsel was ineffective for failing to move for post-conviction DNA testing of the state's evidence – including hair, blood, and mucus samples collected from the crime scene. (Doc. no. 1, p. 6.)

In addressing this claim, the state habeas court specifically applied the standards set forth in Strickland, 466 U.S. 668 (1984), Jones v. Barnes, 463 U.S. 745, 751 (1983), Shorter v. Waters, 571 S.E.2d 383 (Ga. 2002), and Battles v. Chapman, 506 S.E.2d 838 (Ga. 1998). Based on its application of those standards, it concluded that Petitioner had not shown that his appellate counsel's failure to move for post-trial DNA testing on appeal was unreasonable or had subjected Petitioner to prejudice. Here, it cannot be said that the state habeas court confronted a set of facts materially indistinguishable from a Supreme Court case yet reached a different result, or that it applied a rule that contradicts the governing law set forth in Supreme Court precedent; to the contrary, it was correct in applying the two-prong test set forth in Strickland in its evaluation of Petitioner's claim of ineffective assistance of appellate counsel. Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991) (holding that the Strickland test applies to claims of ineffective assistance of both trial and appellate counsel). Therefore, the Court will focus on the question of whether the state habeas court was objectively unreasonable in its application of Strickland's standards to the facts of this case.

In addition to the principles from Strickland and its progeny set forth above, see supra Part III.A.1, in the appellate context, a criminal defendant has no "constitutional right to

11

compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones, 463 U.S. 745, 751 (1983). It is up to appellate counsel to winnow out weaker arguments and select the most promising issues for review. Id. at 751-52. Indeed, the appellate "attorney need not advance every argument, regardless of merit, urged by the appellant . . . ." Evitts v. Lucey, 469 U.S. 387, 394 (1985).

When the claim of ineffective assistance of appellate counsel asserted in Ground Three of the instant petition was before the state habeas court, it emphasized that Petitioner's appellate counsel "did not ask the trial court for post-trial testing of DNA evidence because Petitioner asked that [his counsel] be 'taken off the case.'" (Doc. no. 5, Ex. 3, p. 10.) Applying the above-referenced standards, it concluded that Petitioner's appellate counsel was not ineffective because Petitioner failed to show that his counsel was objectively unreasonable in failing to move for post-trial DNA testing or that he was prejudiced by his counsel's failure to request such testing. (Id. at 10-11.) The state habeas court reasoned that counsel's failure to request post-trial DNA testing resulted from "acceding to Petitioner's request to be taken off the case," and therefore he did not act unreasonably as required by the first prong of Strickland to show constitutional error. (Id. at 11.) The state habeas court further held that Petitioner's claim failed under the second prong of Strickland, reasoning that "Petitioner has not established the requisite prejudice, as he has only assumed that DNA testing would have been favorable to him, but speculation does not suffice." (Id.)

Turning its attention to the instant petition, the Court notes that Petitioner has not offered any evidence to undermine or contradict the factual determinations of the state habeas

12

court with respect to the claim of ineffective assistance of appellate counsel set forth in Ground Three.[5] In particular, Petitioner does not dispute the state habeas court's finding that he asked that his appellate counsel be taken off of his case.

Furthermore, Petitioner has not demonstrated that the state habeas court was objectively unreasonable in its application of the standards of Strickland to the facts of his claim. Petitioner has not shown that his appellate counsel's failure to request post-trial DNA testing was unreasonable, especially following Petitioner's request that his counsel discontinue his representation of Petitioner. Nor has Petitioner provided the Court with any basis to find that the state habeas court was objectively unreasonable in finding that Petitioner failed to meet the second prong of Strickland, since, as the state habeas court noted, Petitioner's claim was premised on speculation that the DNA testing would have been favorable to him. In other words, Petitioner fails to demonstrate how, if his appellate counsel had acted differently, the results of the appeal would have been different.

In sum, the Court finds that the state habeas court's decision was neither contrary to Strickland nor unreasonably applied Strickland to Petitioner's ineffective assistance of appellate counsel claim. Petitioner's claim in Ground Three is therefore without merit and forms no basis for federal habeas relief.

### 3. Insufficiency of the Evidence

In Ground Five of his federal petition, Petitioner contends that the evidence admitted against him at trial was "insufficient to convince a rational trier of fact beyond a reasonable

---

[5]As with Grounds One and Two, in addressing Ground Three the Court will follow the AEDPA's mandate that the state court's factual determinations must be presumed correct until rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

doubt of Petitioner's guilt." (Doc. no. 1, p. 7.) The crux of this claim is that hairs found at the scene of the crime, on the materials used to commit the crime, and in the victim's hand were of Caucasian origin, which shows that the perpetrators were white, whereas Petitioner is African-American. (Id.)

When Petitioner previously asserted this claim on direct appeal, the Georgia Supreme Court applied Jackson v. Virginia, 443 U.S. 307 (1979), and, viewing the evidence in the light most favorable to the verdict, found that "[t]he evidence was clearly sufficient for the jury to conclude beyond a reasonable doubt that [Petitioner] was guilty of [the victim's] murder." (Doc. no. 5, ex. 1, pp. 2-3.)

As correctly noted by the Georgia Supreme Court, the standards from Jackson v. Virginia apply to claims of insufficiency of the evidence. 443 U.S. at 316. The Supreme Court held in Jackson that a conviction only comports with the Due Process Clause if the evidence produced at trial is sufficient to convince the factfinder beyond a reasonable doubt of the existence of every element of the offense in question. Id. The key inquiry is whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Along with these basic principles regarding sufficiency of the evidence, the Court is once again guided by the AEDPA's mandate that the state court's factual determinations are presumptively correct absent rebuttal by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

Here, the Court finds that in deciding Petitioner's challenge to the sufficiency of the evidence, the Georgia Supreme Court did not confront a set of facts materially

14

indistinguishable from a Supreme Court case yet reach a contrary result.[6]  Nor did the Georgia Supreme Court apply a rule that contradicts the governing law as set forth in Supreme Court precedent; to the contrary, as noted above, the Georgia Supreme Court applied the correct Supreme Court precedent – Jackson v. Virginia – in its analysis of Petitioner's claim.

Furthermore, Petitioner has not presented any evidence to rebut the presumptive correctness of the factual determinations made by the Georgia Supreme Court in its adjudication of Petitioner's direct appeal.  In particular, Petitioner has not challenged the accuracy of Court's account of the evidence at trial as viewed most favorably to the prosecution.

Petitioner has also failed to show that the Georgia Supreme Court was objectively unreasonable in its application of the standards set forth in Jackson to his claim.  Petitioner's assertion that Caucasian hairs were found at the scene of the crime, on the materials used to commit the crime, and in the victim's hand is entirely inadequate to establish that the state court unreasonably applied Jackson.  The existence of such hairs is not inconsistent with the other evidence produced at trial.  Furthermore, with or without consideration of the hairs, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the evidence properly admitted at trial, including  Petitioner's statement to the police following the crime indicating knowledge of details of the crime that had not previously been made public and his confession in an account consistent with the evidence

---

[6]While Jackson did involve a challenge to murder conviction, the Court in Jackson determined that the evidence was sufficient to uphold the petitioner's conviction, as did the Supreme Court of Georgia in deciding Petitioner's claim.  Jackson, 443 U.S. at 309, 323.

uncovered in the investigation of the crime. (See doc. no. 5, Ex. 1, pp. 2-3.) Petitioner has

therefore not produced evidence that would rebut the presumption that the state court's

factual determinations are correct, and has not shown that the state court was objectively

unreasonable in its determination that the evidence at trial was clearly sufficient for a jury

to conclude beyond a reasonable doubt that he was guilty. Accordingly, his claim in Ground

Three challenging the sufficiency of the evidence provides no basis for federal habeas relief.

### 4.    Trial Court's Admission of Petitioner's Confession

In Ground Six, Petitioner argues that the trial court erred by admitting a statement he

made to investigating officers in which he confessed to the crime charged at trial. (Doc. no.

1, p. 8.) According to Petitioner, the Court should have granted his motion to suppress that

statement because it was improperly elicited after he had invoked his right to counsel.[7] (Id.)

The admissibility of the confession in question was first addressed during Petitioner's

trial, when the trial court held a hearing pursuant to Jackson v. Denno, 378 U.S. 368 (1964),

to determine the admissibility of several statements made by Petitioner while in custody. As

a result of that hearing, the trial court held that two other statements made by Petitioner on

the day of his arrest were inadmissible because they were made in response to continued

---

[7]Respondent argues that this claim is procedurally defaulted and therefore does not provide a basis for federal habeas relief. (See doc. no. 4-1, pp. 17-21.) Contrary to Respondent's assertion, however, this is not a "new" claim. Petitioner raised the same claim before the Georgia Supreme Court in the second enumeration of error in his direct appeal. (See doc. no. 5, Ex. 1, pp. 2-3.) The Georgia Supreme Court rejected the claim on the merits, as explained more fully below. (Id.) Because the claim was raised on direct appeal, it is not procedurally defaulted. See 28 U.S.C. § 2254(b) - (c); Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 849 (11th Cir. 2008) (per curiam) ("The AEDPA requires a state prisoner to exhaust all available state court remedies, either on direct appeal or in a state post-conviction proceeding, thereby giving the state the opportunity to correct its alleged violations of federal rights. . . ." (citations omitted) (emphasis added)).

police interrogation following a request by Petitioner to have an attorney present. (Doc. no. 5, Ex. 1, p. 2.) However, the trial court found the statement at issue here admissible because, prior to making it, Petitioner had reinitiated further conversation with the police and waived his right to counsel knowingly and intelligently. (Id. at 2-3.)

On direct appeal, Petitioner asserted that the trial court had erred by admitting the statement in which he confessed. The Georgia Supreme Court specifically applied the standards established in Edwards v. Arizona, 451 U.S. 477 (1981), and found that the trial court had not erred by finding the statement admissible. (Doc. no. 5, Ex. 1, p. 2.) The Supreme Court reasoned that, although Petitioner had previously requested an attorney, he subsequently initiated further discussions with the police, and then knowingly and intelligently waived his right to counsel prior to making the statement at issue. (Id., Ex. 2, pp. 2-3.) The court rejected Petitioner's argument that he was unable to effect a knowing and intelligent waiver of his right to counsel because of his below average intellect, reasoning that Petitioner had provided no basis for the Court to disturb the trial court's factual finding of adequate waiver based on the totality of the circumstances.[8] (Id.)

As correctly noted by the Georgia Supreme Court, statements made during custodial interrogation following a request for an attorney are governed under the standards set forth in Edwards, in which the Supreme Court held that a person in custody who has "expressed his desire to deal with the police through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself

---

[8]As noted by the Georgia Supreme Court, the trial court heard conflicting testimony from experts on the issue of Petitioner's mental capacity during the Jackson v. Denno hearing. (Id.)

17

initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-85. If an accused has adequately invoked his right to counsel, then any statement made in response to further police interrogation is inadmissible unless the accused initiated further discussions with the police and knowingly and intelligently waived his right to counsel. Id.; see also Maryland v. Shatzer, 559 U.S. ___, 130 S. Ct. 1213, 1219-20 (2010) (discussing the Edwards rule). The determination of whether an accused's waiver was knowing and intelligent "depends upon 'the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'" Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983) (quoting North Carolina v. Butler, 441 U.S. 369, 374-75 (1979)). The Court will consider these principles applicable to the admissibility of custodial statements made following a request for counsel in conjunction with the Georgia Supreme Court's findings of fact, which, as noted above, are presumptively correct absent rebuttal by clear and convincing evidence. 28 U.S.C. 2254(e)(1).

First, the Court finds that the Georgia Supreme Court did not confront a set of facts materially indistinguishable from a Supreme Court case yet reach a different result,[9] and that it did not apply a rule that contradicts the governing law set forth in Supreme Court precedent.[10] Therefore, the Court will turn its attention to the propriety of the Georgia

---

[9]While the Georgia Supreme Court reached a different result than the United States Supreme Court did in Edwards, the facts of Edwards were not materially similar to those presented on Petitioner's direct appeal. In contrast to Petitioner's appeal, the accused in Edwards did not initiate discussions with the police following his request for counsel, and the trial court had found a valid waiver of the accused's right without assessing whether such waiver had been knowing and voluntary. Edwards, 451 U.S. at 486-87.

[10]As noted above, the Georgia Supreme Court was correct to apply Edwards to Petitioner's claim.

Supreme Court's factual findings and the objective reasonableness of its application of Edwards.

In his federal petition, Petitioner has merely asserted in a conclusory fashion that the "trial court erred when it ruled that [Petitioner's] sixth statement covered by the Jackson-Denno hearing was admissible." (Doc. no. 1, p. 8.) This bare reassertion of his claim provides no evidence to rebut the presumption that the Georgia Supreme Court's factual findings are correct – including its determination that Petitioner reinitiated further discussions with the police and its findings with regard to the totality of the circumstances surrounding his waiver of his right to counsel.

Furthermore, Petitioner has not shown the Georgia Supreme Court's application of Edwards to be objectively unreasonable. To the contrary, the Georgia Supreme Court was reasonable and correct in its application of Edwards, holding Petitioner's statement properly admitted only after finding that Petitioner had reinitiated discussion with the police following his request for counsel and waived his right to counsel in a way that was knowing and voluntary. In other words, Petitioner has provided the Court no basis for disagreeing with the conclusion that he initiated contact with the police following his request for counsel and effected a valid waiver of his right to counsel; nor has he shown how the Supreme Court of Georgia was unreasonable to conclude that the statement in which he confessed to the crime was admissible. Accordingly, Petitioner's claim in Ground Six of his federal petition is without merit and provides no basis for relief.

### B. "Actual Innocence" Claim

In Ground Four of his federal habeas petition, Petitioner asserts that he "is actually

19

innocent of the crime for which he stands convicted," as shown by "the collected evidence" and "the polygraph test." (Doc. no. 1, p. 6.) According to Petitioner, "[s]uch innocence overcomes any procedural bar or time bar." (Id.)

At the outset, the Court notes that two distinct types of "actual innocence" claims have arisen in the field of federal habeas jurisprudence. The first type is "procedural, rather than substantive," and operates as a "gateway" for habeas petitioners to overcome procedural obstacles and obtain review on the merits of other constitutional claims that would otherwise fail on procedural grounds. Schlup v. Delo, 513 U.S. 298, 315 (1995). The second type of "actual innocence" claim that has arisen stands alone, and is premised on the notion that federal habeas relief may be obtained by presenting new evidence sufficient to convince a federal habeas court that a petitioner is in fact innocent of the crime of which he has been convicted. It is far from clear that such a claim can even provide an independent basis for federal relief. The Supreme Court stated the following with relation to this type of claim:

> Whether [the right to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.

See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. ___, 129 S. Ct. 2308, 2321 (2009); see also House v. Bell, 547 U.S. 518, 554-55 (2006); Herrera v. Collins, 506 U.S. 390, 404-05, 417 (1993).

Because Petitioner sets his actual innocence claim forth as a separate ground for relief, yet states that his actual innocence overcomes any procedural bar or time bar, it is not entirely clear which type of actual innocence claim he is asserting. His

20

assertion of actual innocence is unnecessary to the extent that he intends to assert his actual innocence claim only to overcome a procedural bar that may otherwise preclude this Court's consideration of one of his other claims on the merits. Because the Court has found that none of his claims are subject to a procedural or time bar, Petitioner has no need for such an actual innocence argument, and the Court finds no reason to analyze whether it would succeed.

To the extent that Petitioner intends to assert actual innocence as a freestanding basis for relief, his claim fails. Even assuming that such a claim is a cognizable basis for habeas relief, Supreme Court precedent suggests that such a claim would only be available in the context of capital cases to prevent the execution of an innocent person, and here Petitioner does not face the death penalty. See Herrera, 506 U.S. at 417 ("We may assume, for the sake of argument in deciding this case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional . . . ." (emphasis added)). Furthermore, addressing the burden of proof for a freestanding claim of actual innocence, the Supreme Court has explained:

> [B]ecause of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases, and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

Id. (concluding that the petitioner's newly discovered evidence consisting of affidavits containing hearsay and presented long after trial were "far short of [the showing of innocence that] would have to be made in order to trigger" a

21

constitutional claim of actual innocence). Here, Petitioner's showing is even weaker than that which the Supreme Court rejected as inadequate in <u>Herrera</u>. In fact, Petitioner offers no "new" evidence whatsoever – he merely alludes to "the collected evidence" and "the polygraph test," the latter of which is inadmissible in the guilt phase of a criminal trial under Georgia law, <u>see</u> <u>Harper v. State</u>, 249 Ga. 519, 524 (1982), but was in fact held admissible in the sentencing portion of Petitioner's trial. Assuming the existence of a claim based on actual innocence, the Court finds Petitioner has made no showing whatsoever as to new evidence, much less the "extraordinarily high" showing that would be required to satisfy the burden of proof for such a claim. <u>Herrera</u>, 506 U.S. at 417. Therefore, to the extent that Petitioner intends to assert a freestanding claim for relief based on actual innocence in Ground Four of his habeas petition, his claim is without merit.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 26th day of October, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE